James H. Hohenstein
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200
Telefax: (212) 385-9010
E-mail: jim.hohenstein@hklaw.com
        lissa.schaupp@hklaw.com

Attorneys for Plaintiff,
L Bridge Limited

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK





| | |
|---|---|
| L BRIDGE LIMITED, | |
| Plaintiff, | 08 Civ.      (    ) |
| -against- | **VERIFIED COMPLAINT** |
| COSMOTRADE EXPORTS S.A., and COSMOFREIGHT INC., | |
| Defendants. | |

Plaintiff, L Bridge Limited ("L Bridge") by and through its attorneys, Holland & Knight

LLP, for its verified complaint against defendants, Cosmotrade Exports S.A. ("Cosmotrade") and

Cosmofreight Inc. ("Cosmofreight"), alleges, upon information and belief, as follows:

1.       This is a case of admiralty and maritime jurisdiction as hereinafter more fully

appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure.

2.     At all times material herein, plaintiff L Bridge was and is a business entity organized and existing under the laws of the United Kingdom and maintains a place of business at 25 Dorset Square, London, NW1 6QG.

3.     Upon information and belief, at all times material herein, defendant Cosmotrade was and is a foreign entity organized and existing under the laws of a foreign nation with a principal place of business at 27-31 Hatzikyriakou Avenue, Pireaus, 18538 Greece.

4.     Upon information and belief, at all times material herein, defendant Cosmofreight was and is a foreign entity organized and existing under the laws of a foreign nation and was, and still is, a paying/receiving agent of Cosmotrade.

5.     On or about December 19, 2007 L Bridge as owner of the M/V LONDON BRIDGE ("Vessel") and Cosmotrade as charterer entered into a time charter party ("Time Charter"), which was memorialized via a clean fixture recap ("Fixture Recap").  A true and correct copy of the Fixture Recap is attached hereto as Exhibit 1.

6.     The Time Charter was based on a *pro forma* time charter party dated August 25, 2006 between Tekunmata Sdn Bhd as owner and Cosmotrade as charterer with logical amendments.  A true and correct copy of the *pro forma* charter party is attached hereto as Exhibit 2.

7.     Under the terms of the Time Charter as reflected in the Fixture Recap, L Bridge is entitled to payment by Cosmotrade of $68,000 per day hire for the use of the vessel, to be paid 15 days in advance.  Exhibit 1.

8.     The Vessel was delivered to Cosmotrade on December 20, 2007 with redelivery anticipated for January 27, 2008.

9.    L Bridge's current hire statement, duly tendered on Cosmotrade on January 14, 2008, shows a balance immediately due L Bridge of $895,874.71 which Cosmotrade, despite demand, has refused to pay. It should be noted that the statement reflects that some reduction of the amount due may need to be made when and if Cosmotrade submits proper supports for the costs of shore cranes at Illichevysk: to date no such supports have been received by L Bridge. A true and correct copy of the current hire statement is attached hereto as Exhibit 3. While Exhibit 3 is the "1ST HIRE STATEMENT," this is a misnomer. Exhibit 3 is the second hire statement as is indicated by the payment of $1,332,063.00 in the column on Exhibit 3 reflects credits to the charterer, Cosmotrade for the payment made by Cosmofreight on behalf of Cosmotrade for monies due under the (actual) first hire statement.

10.    The terms of the Fixture Recap call for the application of English law and London arbitration. While all disputes arising out of the Time Charter are to be arbitrated in London, the action herein is submitted in accordance with Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure as well as 9 U.S.C. §8, and is not and cannot be considered a waiver of the Time Charter's arbitration clause.

11.    Interest, costs and attorneys' fees routinely are awarded to the prevailing party in London arbitration proceedings.

12.    Upon information and belief, it would take two years to arbitrate this dispute to conclusion, resulting in the following estimated interest and attorneys' fees and costs:

| Interest: | $ | 134,381.21 |
|---|---|---|
| Attorneys' fees: | $ | 100,000.00 |
| Costs: | $ | 30,000.00 |

3

Total Principal Claim:      $   895,874.71

Total Sought:            **$1,160,255.92**

13.      Upon information and belief, Cosmotrade uses Cosmofreight as an agent for payment or "pass through entity" by which Cosmofreight makes payment on behalf of Cosmotrade without Cosmofreight having received any consideration or benefit. Alternatively, Cosmotrade and Cosmofreight have commingled funds and/or otherwise are failing to observe corporate formalities by allowing Cosmofreight to pay for debts owed on behalf of Cosmotrade rather than Cosmofreight.

14.      It is not general practice in the maritime community for an independent company to make or receive large payments on behalf of another independent company.

15.      Payments sent or received on behalf of another independent company are indicative of a relationship that is not "arms length."

16.      Neither Cosmotrade nor Cosmofreight is found within the Southern District of New York but they do have assets, good or chattels within the jurisdiction, to wit: funds or accounts held in the name(s) of Cosmotrade Exports S.A. and/or Cosmofreight Inc. with, upon information and belief, the following financial institutions: ABN Amro Bank; American Express Bank; Banco Popular; Bank of America, N.A.; Bank of China; Bank Leumi USA; The Bank of New York; Bank of Tokyo-Mitsubishi UFJ Ltd.; BNP Paribas; Calyon Investment Bank; Citibank, N.A.; Commerzbank; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Standard Chartered Bank; Société Générale; UBS AG; Wachovia Bank, N.A.; Wells Fargo Bank, National Association; or any other financial institution within the Southern District of New York.

**WHEREFORE**, Plaintiff demands judgment as follows:

1.    That process in due form of law according to the practice of this Court in the form of a writ of maritime attachment be issued against bank accounts and other property of Cosmotrade Exports S.A. and/or Cosmofreight Inc. with the financial institutions noted above in paragraph 16;

2.    That Cosmotrade Exports S.A. and Cosmofreight Inc. and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.    That this court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court.

4.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

5.    That this Court award Plaintiff its attorney's fees and costs of this action; and,

6.     That this Court grant L Bridge Limited such other and further relief which it may

deem just and proper.

Dated: New York, New York
       January 16, 2008

HOLLAND & KNIGHT LLP

By: _____

James H. Hohenstein
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200
Telefax: (212) 385-9010
E-mail: jim.hohenstein@hklaw.com
        lissa.schaupp@hklaw.com

Attorneys for Plaintiff,
*L Bridge Limited*

## VERIFICATION

STATE OF NEW YORK      )

                                :ss.:

COUNTY OF NEW YORK    )

JAMES H. HOHENSTEIN, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for L Bridge Limited ("Plaintiff"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Plaintiff and corresponded with Plaintiff's representatives regarding this matter. I am authorized by Plaintiff to make this verification, and the reason for my making it as opposed to an officer or director of Plaintiff is that there are none within the jurisdiction of this Honorable Court.

_____
James H. Hohenstein

Sworn to before me this
_16_ day of January, 2008

_____
Notary Public

ROSE MARIE LOGGIA
Notary Public, State of New York
No. 01LO4603173
Qualified in Kings County
Commission Expires August 31, _2010_

# 5061328_v1

7

# EXHIBIT 1

**Schaupp, Lissa D (NYC - X73588)**

| | |
|---|---|
| **From:** | FIX at British Marine Plc [fix@britmarine.co.uk] |
| **Sent:** | Thursday, December 20, 2007 12:11 AM |
| **To:** | operations@britmar; Harish at Britmarine; Ketty at OBC; Paul Gregory |

**Subject:** London Bridge next voyage

----- Original Message -----
From: <chartering@optimashipbrokers.gr>
To: "BRITISH MARINE PLC" <amit@britmarine.co.uk>
Sent: Wednesday, December 19, 2007 10:20 PM
Subject: LONDON BRIDGE/COSMOTRADE

> TO..: "BRITISH MARINE PLC"
> ATTN: MR AMIT SHARMA
> FROM: "Optima Chartering"<chartering@optimashipbrokers.gr>
> DATE: 19-DEC-2007 18:50
> MSG.: 14242235
>
> AMIT/EDDY
>
> REF M/V LONDON BRIDGE / COSMOTRADE
> -----
> FURTHER SEVERAL TEL CONVS, PLSD TO CONFIRM CLEAN FIXTURE WTH
> ALL SUBS IN ORDER AND C/P DATE 19TH DEC 2007, AS PER FOLL RECAP:
>
>
> M/V LONDON BRIDGE
> -----------------
> ALL DETAILS ABOUT
>
> VESSELS NAME    M/V LONDON BRIDGE
>
> VESSELS EX NAMES        M/V OBC ANNA, M/V LUCASTA, EX M/V BULK ORION
>
> OWNERS  L-BRIDGE LIMITED
>      25 DORSET SQUARE
>      LONDON
>      NW1 6QG
>
> BUILDERS       TSUNEISHI SHIPBUILDING CO LTD, JAPAN
> BUILT  1994
> SDWT/DRAFT     45708 MT/11.620 M
> WDWT/DRAFT     44504 MT/11.378 M
> TDWT/DRAFT     46917 MT/ 11.862 M
> FDWT/DRAFT     45707 MT/ 11.886 M
>
> PORT OF REGISTRY & REGISTRY NO. LONDON, OFFICIAL NO.: 908289
> FLAG   BRITISH
> SHIPS CLASSIFICATION SOCIETY    NK
>
> IMO NO. 9082764
> CALL SIGN      M Q Z C 9
> LDT    LIGHT DRAFT: 3.41m, LOAD DRAFT: 11.620m (SUMMER)
> GRT/NRT 26059 / 14880 MT
> SUEZ GRT/NRT   26809.45 / 24193.32 MT

1/15/2008

> PANAMA GRT/NRT  NRT 21673 MT
> LOA/BEAM/LBP   185.74m / 30.40 m / 177.0 m
> DEPTH  16.50 M (MOULDED)
> LIGHTSHIP      7473 MT
>
> GRAIN /BALE    57208.4 CU.M. / 55564.9 CU.M. (INCL. HATCH COAMING)
> CRANES  SWL 25 MT X 4 NOS. ELECTROHYDRAULIC DECK CRANES
> 4 x 10 CBM GRABS
>
> CRANE MAX OUTREACH     6.80M FROM SHIPSIDE.
>
> ONE MAIN ENGINE MITSUI MAN B&W 6S50MC (MARK V) X 1 SET
>       MCO - 9750 PS (7171 KW) X 120 RPM
>       CSO (85% MCO) - 8290 PS (6097 KW) X 114 RPM
>
> GENERATORS     THREE - YANMAR M200L - SN, 440 KW
>
> TANK TOP STRENGTHS    HOMO. LOAD          ALT. LOAD
> NO.1   13.73 MT / SQ.M           22.09 MT / SQ M
> NO.2   13.73 MT / SQ.M
> NO.3   13.73 MT / SQ.M           21.94 MT / SQ M
> NO.4   13.73 MT / SQ.M
> NO.5   13.73 MT / SQ.M           22.09 MT / SQ M
> UPPER DECK     3.45 MT/SQM EXCEPT BETWN HATCH ENDS
> HATCH COVERS   NO.1: 2.08 MT/SQM, NO. 2-5: 1.75 MT/SQM
> HOLDS/HATCHES   5 HOLDS / 5 HATCHES
> HATCH COVERS   HYDRAULIC OPERATED, END FOLDING TYPE
>       STEEL HATCH COVERS.
>
> HOLD NO. 3     WATER BALLST CAPACITY-11769 CBM
>
> HOLD CAPACITIES
> NO.1   10361.60 CUM
> NO.2   12199.40 CUM
> NO.3   11731.10 CUM
> NO.4   12193.80 CUM
> NO.5   10722.50 CUM
> TOTAL  57208.40 CUM
> FUEL TANK CAPACITIES
> FUEL OIL      1701.90 CUM (100%) INCL SERV & SETT TANKS
> DIESEL OIL     86.60 CUM (100%) EXCL. SERV TANK.
> BALLAST WATER CAPACITY  TANKS: 14827.2 CUM, NO.3 HOLD: 11769.0 CUM
> FRESH WATER CAPACITY    389.0 CUM
> CONSTANT EXCLUDING FRESH WATER  250.0 MT FRESH WATER EVAPORATOR CAPACITY 10.0
> MT/DAY
>
> SPEED & CONSUMPTIONS
> IN BALLAST    ABT 14.00 KTS @ ABT29.0 MT/DAY (ME=27.3 MT, AE=1.7 MT)
> IN LOADED     AGT13.50 KTS @ ABT29.0 MT/DAY (ME=27.3 MT, AE=1.7 MT)
> IN PORT IDLE   3.5 MT (AE=1.7 MT, BLR=1.8 MT)
> IN PORT 24 HRS GEAR WORKING    5.2 MT (AE 2x1.7 MT + BLR 1.8 MT)
>       VSL CONSUMES MDO WHILE MANOEUVRING IN/OUT OF
>       PORT AND IN RESTRICTED WATERS.
> BUNKER SPECIFICATION - IFO    ISO 8217:1996-380 CST RMG 35
> BUNKER SPECIFICATION - MDO     ISO 8217 DMB  MDO: 3~8 CST AT 50 Deg. C,
> BUNKER SPECUFICATION- MGO /BLENDED     N/A
> HULL & MACHINERY INSURED WITH   THE NEW INDIA ASSURANCE CO. LTD.
>
> P & I CLUB     GARD
>
> IS VSL SUEZ, PANAMA CANAL FITTED       YES

> HOLD VENTILATION( NATURAL OR ELECTRIC)  NATURAL
> VESSEL ICE CLASS / STRENGTHENED NO
> DOES VSL HAVE AUSTRALIAN HOLD LADDERS   YES
> IS VESSEL ITF FITTED   YES
> IS VESSEL LOG FITTED, INCLUDING LASHING NO
> MATERIALS,STANCHIONS ETC      NIL
> NUMBER AND NATIONALITY OF CREW  26 - INDIANS AND FILLIPINOS.
>
> VSL'S CONTACT DTLS:
> TEL: 764674963
> FAX: 764674964
> TLX: 423500051
>
> HOLD DIMENSIONS (L XB X H  )
> NO.1 L:27.2m, B(F):21.0m, B(A):30.4m, H:16.8m (upto top of coaming)
> NO.2 L:28.4m, B(F&A):30.4m, H:16.8m
> NO.3 L:27.4m, B(F&A):30.4m, H:16.8m
> NO.4 L:28.4m, B(F&A):30.4m, H:16.8m
> NO.5 L:27.4m, B(F):30.4m, B(A):30.0m, H:16.8m
>
> - FULL AND COMPLETE TC DESCRIPTION AS PER CHRS QUESTIONAIRE WHICH TO BE
> INCORPORATED IN AND FORM PART OF THE C/P (OWNRS WLL REVERT TOMOR MRNG)
>
>
> FOR:-
>
> - A/C COSMOTRADE EXPORTS SA BVI.
> - DEL DOP ODESSA ATDNSHINC
> - LAY/CAN 20TH DEC 12:00HRS LT / 20TH DEC 24:00HRS LT
> - 1 TCT VIA SP/SB/SA AA AWIWL INCL MULTIPLE LOADING/DISCHARGE VIA
> BSEA/EMED TO RED SEA /PG INDIA WITH STEELS  A/O OTHER GENS / BLK
> DURATION  32/38 DAYS WOG
>
> - TRADING EXCLUSIONS:
>
> VESSEL TO BE EMPLOYED IN LAWFUL TRADES FOR THE CARRIAGE OF LAWFUL
> MERCHANDISE ONLY BETWEEN GOOD AND SAFE PORTS/BERTHS/ANCHORAGES
> WHERE VESSEL CAN SAFELY LIE ALWAYS AFLOAT ALWAYS WITHIN I.W.L.
> SPECIFICALLY EXCLUDING RUSSIAN SIBERIAN PORTS, CIS PACIFIC PORTS,
> EQUADOR, EL SALVADOR, NORTH KOREA , CAMBODIA, IRAQ, IRAN, ISRAEL
> AND ISRAELIAN CONTROLLED TERRITORIES, LEBANON, SYRIA, ANGOLA
> (INCLUDING CABINDA), ALBANIA, AMAMAPARE, ETHIOPIA, SOMALIA,
> ZAIRE, ,LIBERIA, LIBYA, FORMER YUGOSLAVIA, CUBA, HAITI, BELIZE, NICARAGUA,
> ST LAWRENCE RIVER WEST OF MONTREAL, AREAS/PORTS AFFECTED BY ASIAN
> GYPSY MOTH AND ANY AREAS/PORTS THAT MAY BE INCLUDED AS RESTRICTED
> PORTS BY THE WAR COMMITTEE OF LLOYDS UNDERWRITERS.
>
>
> CHARTERERS ARE NOT ALLOWED TO:
>
> SEND VESSEL FOR WHATEVER PURPOSES DIRECTLY FROM TAIWAN TO
> MAINLAND CHINA OR VICE-VERCA, UNLESS CALLING AN INTERMEDIATE
> PORT NOT IN TAIWAN NOR IN MAINLAND CHINA.
> IN CASE OF ANY BREACH BY CHARTERERS OF ANY OF THE ABOVE, CHARTERERS
> TO BE RESPONSIBLE FOR ANY/ALL CONSEQUENCES AND/OR LIABILITIES
> RESULTING/ARISING THEREFROM  AND ALSO FOR ANY/ALL LOSS(ES/DAMAGE(S)
> SUSTAINED BY THE OWNERS.
>
> ANY ADDITIONAL WAR RISKS INSURANCE PREMIUM AND/OR ANY INCREASE IN
> WAR RISKS INSURANCE PREMIUM FOR TRADING TO AREAS WHERE SUCH
> ADDITIONAL AND/OR INCREASED PREMIUM PAYABLE AS DESIGNATED BY WAR

> RISK UNDERWRITERS TO BE FOR CHARTERERS ACCOUNT, AND CHARTERERS
> TO MAKE PROMPT REFUND TO OWNERS ON PRODUCTION OF INVOICE ISSUED
> BY UNDERWRITERS' INSURANCE BROKERS. CREW WAR RISK BONUSES, IF ANY,
> TO BE FOR CHARTERERS ACCOUNT.
>
> ADDTL WAR RISK PREMIUM NOT EXCEDIN WHAT IT IS QUOTED IN LDN MKT
>
> - CARGO EXCLUSIONS:
>
> LIVESTOCK, ARMS, AMMUNITION,ACIDS, EXPLOSIVES, ASPHALT, PITCH IN
> BULK, AMMONIUM NITRATE , AGGREGATES,  BLACK POWDER,  BLASTING
> CAPS, BONES, CHARCOAL, NAPTHA, NUCLEAR FUEL,  PITCH OF ANY KIND,
> RESIN, LOGS, EXPELLERS OF ANY KIND, INDIAN COAL, POND COAL, WET
> HIDES, CALCIUM CARBIDE, FERRO SILICON, PIPES, OLD RAILS DIRECT REDUCED
> IRON/IRON ORE LUMPS/PELLETS, ACIDS, NAPHTHA, TAR, HIDES, BONES,
> SHAVINGS, SALT, SALTPETRE, FERRO SILICON, QUEBRACHO EXTRACT, SILICON
> MANGANESE, SILICON, SPONGE IRON, COPRA, FISHMEAL, SCRAP, MOTOR BLOCKS
> AND TURNINGS, SWARF, TAR, TOBACCO, METAL BORINGS AND CUTTINGS, HOT
> BRIQUETTED IRON AND THEIR FINES, WHEATFLOUR IN BULK, BAGGED RICE,
> BULK RICE FOR WEST AFRICAN DESTINATION, WOOD PULP, NEWS PRINT,
> PAPER PRODUCTS, CREOSOTED GOODS, BULK BORAX, MOTOR SPIRIT, NUCLEAR
> AND RADIOACTIVE WASTE/MATERIALS/GOODS AND ITS PRODUCTS/BY-PRODUCTS,
> PETROLEUM AND ITS PRODUCTS, CHARCOAL, BULK CEMENT (INCLUDING CEMENT
> CLINKER), COTTON, SULPHUR, SODA ASH, STEEL SLABS IN VERTICAL/CALIFORNIAN
> BLOCK STOW, ALL UNLAWFULL/EMBARGOED/INJURIOUS/ INFLAMMABLE/
> DANGEROUS GOODS/COMMODITIES AS LISTED IN LATEST IMO D.G.CODE AND/
> OR ANY SUBSEQUENT AMENDMENTS/MODIFICATIONS THEREOF.
>
> NOTWITHSTANDING THE ABOVE :
>
> - DECK CARGO TO BE ALLOWED UNDER THIS C/P SUBJECT TO OWNERS PROTECTIVE
> CLAUSE, WHICH AS FOLLOWS :
>
> CHARTERERS TO HAVE THE OPTION OF LOADING CARGO ON DECK/HATCH COVERS AT
> CHARTERERS TIME/RISK/EXPENSE ALWAYS IN ACCORDANCE WITH VSLS DECK/HATCH
> COVER STRENGHT AND VSLS STABILITY TO MASTER'S SATISFACTION. ALL BS/L FOR
> DECK CARGO SHALL BE MARKED "SHIPPED ON DECK AT SHIPPERS/RECEIVERS RISK
> AND EXPENSE, VESSEL NOT RESPONSIBLE FOR DAMAGE AND/OR LOSS HOWSOEVER
> CAUSED".
>
> Steels
>
> If Charterers are to load steels then Owners are to have the option of
> appointing a P&I appointed surveyor to survey cargo during loading and
> assist vessel with ensuring accurate remarks are made in Mate's Receipts.
> Cost of such surveyor shall be split 50/50 between Charterers and Owners.
>
> - HIRE USD 68,000 DIOT PAYABLE EVERY 15 DS IN ADV.
> - REDELIVERY : DLOSP SP KARACHI/MUMBAI RGE AT CHOPT
> - C/V/E USD 1250 PMPR.
> - ILOHC USD 4500 LSUM INCL L/D/D REMOVAL.
> - BUNKERS ON DELY ABT 750/800 MT OF IFO AND ABT 10/20 MT OF MGO
> BUNKERS ON REDELIVERY ABT SAME AS ACTUALLY AS ON BOARD ON DELIVERY.
> CHRTRS TO TAKE OVER AND PAY FOR BUNKERS TOGETHER WITH FIRST HIRE
> PAYMENT.BUNKERS AT USD 490 PER MT IFO AND USD 780 MT PER MT MGO
> CHRTRS HAVE THE RIGHT TO DEDUCT FROM LAST SUFFICIENT HIRE PAYMENT
> ESTIMATED VALUE OF BOR.
> - ENGLISH LAW,LONDON ARBITRATION TO APPLY
> - CHRS TO HAVE THE OPTION TO HOSE TEST OR ULTRASONIC TEST THE
> HATCHCOVERS AT THE LOADING PORTS IN THEIR TIME AND AT THEIR
> EXPENSE.IF THE HATCH(ES) ARE FOUND NOT TO BE WATERTIGHT,THE

> OWNERS WILL IMMEDIATELY TAKE  ALL THE NECESSARY STEPS AND
> MAKE ALL THE NECESSARY ARRANGEMENTS  IN ORDER TO MAKE THE
> HATCHCOVERS WATERTIGHT.
> Vessels hatch covers have been hose tested and have been found to be
> water tight. In case if any minor leaks are found then Owners will take
> such steps to rectify same including but not limited to using ramnek
> tapes to further seal hatches after loading to ensure water tightness.
> - 5 TTL TO OPTIMA INCL ADDRESS COMMISSION
> - OTHERWISE FURTHER TERMS AND DETS AS PER 'ALAM SEMPURNA' C/P DATED 25TH
> AUG 2006, LOGICALLY AMMENDED AS PER MAIN TERMS AGREED ABOVE PLUS FOLL
> ALTERNATIONS AND ADDITIONS:
>
> - line 141: delete from "If vessel is fitted with cranes.........for"
> - cls 32: redel notice to read as 15/10/7 days approx and 5/3/2/1 definite
>      notice of redelivery
> - cls 35A: to be as per main terms
> - cls 38: to be as per main terms
> - cls 51: H&M value: USD 45M
> - cls 59: line 2 delete from "fuel Oil...cls 78" and insert the bunker
>      specs as per vsl descr in main terms
> - cls 77: (A) in the end insert "but chrts to always take Owners prior
>      permission which not to be unreasonably withheld"
>       (B) replace prices of bunker as per main terms.
> - cls 78: as per vsl descr in main terms
> - cls 108: delete and insert as per mainterms agreement
>
> end
>
> THKS FOR THIS FIXTURE
>
> K.RGDS
>
>

# EXHIBIT 2

# TIME CHARTER
GOVERNMENT FORM
Approved by the New York Produce Exchange
November 6th, 1913-Amended October 20th, 1921 ; August 6th, 1931 ; October 3rd, 1946

1.   This Charter Party, made and concluded in **Piraeus**......................................................................**25**TH .......day of **August 2006**
2.   Between ..Messrs... **TEKUNMATA SDN BHD**……………………………………………………………………
3.   Owners of the good..**M/V ALAM SEMPURNA** ..........Steamship/Motorship ........................of...**MALAYSIA  FLAG**.....................
4.   of ....**17.065**........ tons gross register, and ......**10.334**...tons net register, having engines of ............................. indicated horse power
5   and with hull, machinery and equipment in a thoroughly efficient state, and classed......**AMERICAN BUREAU OF SHIPPING**.... …
6.   at ...........of about..**33607**.. cubic **meters** feet-bale capacity, and about .............**28.094**..... tons of 2240-lbs.
7.   deadweight capacity (cargo and bunkers,-constants excluding-including fresh water and store not exceeding one and one-half percent of ship's deadweight capacity,
8.   allowing a minimum of fifty tons) on a draft of .**10,609 M**…..feet. ….inches on........................... Summer freeboard, inclusive of permanent bunkers ;
9.   which are of the capacity of about…………………………………………………tons of fuel, and capable of steaming, fully laden-under good weather
10.  conditions about ….. knots on a consumption of about              of best Welsh coal-best grade fuel oil-best grade Diesel oil
11.  now …**TRADING**…………………………………………………………………………………………………………....……
12.  …..……………………….. and…Messrs …………**COSMOTRADE EXPORTS S.A.**...…….Charterers of the City of…….**TORTOLA-B.V.I.**…..
13.      Witnesseth, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14.  about- **ONE TIME CHARTER VIA SAFE PORT(S)/ SAFE BERTH(S)/ SAFE ANCHORAGE(S) ALWAYS AFLOAT ALWAYS WITHIN INSTITUTE WARRANTY LIMITS VIA BLACK SEA / EAST MEDITERRANEAN TO RED SEA, PERSIAN GULF, WEST COAST INDIA IN/OUT GEOGRAPHICAL ROTATION WITH STEELS AND/OR OTHER LAWFUL GENERALS AND BULK CARGOES, INCLUDING MULTIPLE ROTATION. DURATION ABOUT 30-35 DAYS WITHOUT GUARANTEE..**
15.  within below mentioned trading limits.
16.  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17   the fulfillment of this Charter Party. **Acceptance of delivery of the vessel by charterers shall not constitute a waiver of owenrs' obligations under this Charter Party.**
18.  Vessel to be placed at the disposal of the Charterers, at ON **DROPPING LAST OUTWARD SEA PILOT TRIPOLI, LYBIA ANY TIME DAY/NIGHT**
19.  **SUNDAYS/HOLIDAYS INCLUDED**……………………………………………………………………………………………
20.  in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No.6), as
21.  the Charterers may direct.  If such dock, wharf or place be not available time to count as provided for in clause No. 5. Vessel on her delivery to be
22.  ready to receive **any permissible** cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the service, **AND SHALL REMAIN SO FOR THE CURRENCY OF THS TIMECHARTER**, having water ballast, winches and
23.  donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same
24   time (and with full complement of officers, seamen, engineers and firemen **according to regulations** for a vessel of her tonnage), to be employed, in carrying lawful merchan-
25.  dise, including petroleum or its products, in proper containers, excluding   **SEE CLAUSE 35A**…………………………………….....………
26.  (vessel is not to be employed in the carriage of the Live Stocks, but Charterers are to have the privilege of shipping a small number on deck at their risk,
27.  all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between **GOOD** safe port and/or **GOOD SAFE** ports **AND GOOD SAFE BERTH AND/OR GOOD SAFE BERTHS AND GOOD SAFE ANCHORAGE AND/OR GOOD SAFE ANCHORAGES, ALWAYS AFLOAT, ALWAYS WITHIN INSTITUTE WARRANTY LIMITS (SEE ALSO CLAUSE 38)** in British North
28.  America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
29.  Mexico, and/or South America  ……………………………………………………………………………………………… and/or Europe
30.  and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between
31.  October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltie
32.  …………………........………………………………………………………………………………………………………………
33.  ………………………………………………………………………………………………………………………………….....

34. ................................................................................................................................................................................

35. as the Charterers or their Agents shall direct, on the following conditions:

36. 1. That the Owners shall provide and pay for all provisions, wages **including overtime (see also clause 23a)**, boatage for their own business, **immigration** and consular shipping  and discharging fees of the Crew; **also consular fees pertaining to vessel's nationality and all garbage removal and gangway watchmen except compulsory** shall pay for the

37. insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including ~~boiler~~ **fresh** water **except for hold cleaning and lubricating oil** and maintain her class and keep

38. the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service **with inspection certificates necessary to comply with safety and health regulations and with current requirements at all ports of call for and during the service.**

39. 2. That **whilst on hire** the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, **compulsory or recommended** Pilotages, **or recommended by governmental authority or internationally recognized body** Agencies, Commissions,

40. Consular Charges (except those pertaining to the Crew or flag or vessel), and all other usual expenses except those before stated, but when the vessel

41. a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

42. illness of the crew to be for Owners account.  Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43. charter to be for Charterers account. **SEE ALSO CLAUSE 103.**~~All other fumigations to be for charterers account after vessel has been on charter for a continuous period~~

44. ~~six months or more.~~ **Owners to provide and keep on board valid Deratization Certificate throughout the time Charter Period.**

45. Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

46. Owners to allow them the use of any dunnage and shifting boards and lashing equipment already aboard vessel. Charterers to have the privilege of using shifting boards

47. for dunnage, they making good any damage thereto.

48. 3. **Bunkers on delivery/redelivery: See Clause 3A.**~~That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~

49. ~~borad the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ........................ tons and not more than~~

50. ~~.................. tons and to be re-delivered with not less than ......................... tons and not more than ...................... tons.~~

51 4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of **US$15,800.00 - DAILY INCLUDING OVERTIME PAYABLE**    52. **EVERY 15 DAYS IN ADVANCE**................ ~~United States Currency per  ton on vessel's total deadweight carrying capacity, including bunkers and~~

53. ~~stores, on~~ ................................. ~~summer freeboard, per Calendar Month,~~ commencing on and from the day/**time**  of her delivery, as aforesaid, and at

54. and after the same rate for any part of a **day** ~~month~~ ; hire to continue until the ~~hour~~ time of the day of her re-delivery **as per Clause 55** in like good order and condition, ordinary

55. wear and tear excepted, to the Owners (unless lost) ~~at~~ **ONE SAFE PORT PERSIAN GULF (NOT NORTHEN THAN 27 DEGREE)/ MUMBAI RANGE AT CHARTERERS' OPTION**

56. **ANY TIME DAY OR NIGHT, SUNDAYS AND HOLIDAYS INCLUDED** unless otherwise mutually agreed. Charterers are to give Owners not less than **(see Clause 32)** days

57. notice of vessels expected date of re-delivery, and probable port.

58. 5. Payment of said hire to be made in **See Clause 5A** ~~New York in cash in United States Currency, semi-monthly~~ **every 15days** in advance, and for the lastt 15 days ~~last half-month~~ or

59. part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60. due, if so required by Owners, unless bank guarantee or deposit is made by Charterers, otherwise failing the punctual and regular payment of the

61. hire, or bank guarantee, or on any **material** breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the

62. Charterers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from  7a.m. on the working day~~

63. ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

64. ~~to have the privilege of using vessel at once, such time used to count as hire..~~

65. Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain subject, by the Charterers or their Agents, subject

66. to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the

67. application of such advances.

68. 6.  That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place **or such open roadstead anchorage, however if such anchorage place is not customary for same size of vessel, Owners' prior consent to be necessary, which shall not be unreasonably withheld** that Charterers or their Agents may

69.     direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such places where it is customary for similar size vessels to safely~~

70. ~~lie aground.~~

71. 7. That the whole reach of the Vessel's Hold, and **other** usual places of loading (not more than she can reasonably stow and carry), also

72.     accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73.     tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~

74. ~~paying Owners ............... per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~

75. ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~ .

76. 8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77.     boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78.     agency; and Charterers are to load, stow, ~~and~~ trim, **discharge, lash, tally, unlash, dunnage, secure and tally (if applicable)** the cargo at their

79.     expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, **in conformity with Mate's and Tally Clerk's receipts.**

80. 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81.     receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82. 10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyage are prosecuted

83.     with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the

84.     rate of $1.00 per day. ~~Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally~~

85. ~~Clerks, Stevedore's Foreman, etc., charterers paying at the current rate per meal, for all such victualing.~~ *See Clauses 72 and 91.*

86. 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87.     Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88.     terers, their Agents or Supercargo, when required, with a true copy of daily deck and engine' Logs, showing the course of the vessel and distance run and the con-

89.     sumption of fuel., **as well as revolutions of main engine and velocity and direction of wind and sea, all in English language.**

90. 12. That the Captain shall use diligence in ~~caring for the~~ **the care, custody** and the ventilation of the cargo.

91.     ~~13. That the Charterers shall have the option of continuing this charter for a further period of~~ .......**SEE LINE 14**......................................................

92. ...............................................................................................................................................

93. ~~on giving written notice thereof to the Owners or their Agents ..... days previous to the expiration of the first-named term, or any declared option.~~

94. 14. That if required by Charterers, time not to commence before.......**0001HRS 26TH AUGUST 2006**.....................and should vessel

95. not have **delivered** ~~given written notice of readiness~~ on or before.....**2359hrs 31ST AUGUST 2006**........ ~~but not later than 4 p.m.~~ Charterers or

96. their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. **Such option to be exercised within 24 hours of receipt of vessel's Notice of Readiness**

97. 15. That in the event of the loss of time from deficiency **and/or default of crew or officers and/or deficiency** ~~of~~ men or stores ,fire, breakdown or damages to hull, machinery or equipment,

98. grounding, detention by average accidents to ship or cargo, **or oil pollution only due to ship's fault,** drydocking for the purpose of examination or painting bottom, or by any other cause **whatsoever**

99. preventing the full working of the vessel, **or any extra delay in consequence thereof** the payment of hire shall cease for the actual time thereby lost; and if upon the voyage the speed be reduced by

100.     defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101.     thereof, and all extra **relevant** expenses **fully documented or telex/fax received from relevant agents** shall be deducted from the hire.

102. 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103.     returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104.     Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

105.     The vessel shall have the liberty to **sail with or without pilots,** to tow and to be towed, to assist vessels in distress, and to deviate for the

106.     purpose of saving life and property. **SEA ALSO CLAUSE 58**

107. ~~17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons New York,~~

108. ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for~~

109. ~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.~~ *(See Clause No.54)*

110. 18. That the Owners shall have a lien upon all cargoes, and all sub-freights **and sub hires** for any amounts due under this Charter, including

111.     Average contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112.     deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

113.    might have priority over the title and interest of the owners in the vessel.

114.    19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115.    Crew's proportion.  General Average shall be adjusted, stated and settled, according to Rules ~~1 to 15, inclusive,~~ 17 to 22, inclusive, and Rule F of

116.    York-Antwerp Rules *1994 in London and any subsequent amendments* ~~1924, at such port or place in the United States as may be selected by the carrier~~, and as to matters not provided for by these

117.    Rules, according to the law and usages at the port of *London* ~~New York.  In such adjustment disbursements in foreign currencies shall be exchanged into~~

118.    ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted~~ at

119.    the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship.  Average agreement or

120.    bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier

121.    or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if

122.    required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.  Such deposit shall, at the option of the

123.    carrier, be payable in United States money and be remitted to the adjuster.  When so remitted the deposit shall be held in a special account at the

124.    place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in

125.    United States money. *Hire is not to contribute to General Average.*

126.    In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,

127.    whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the

128.    goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,

129.    losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the

130.    goods. ~~If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~

131.    ~~ships belonged to strangers.~~

132.    Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133.    20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the

134.    cost of replacing same, to be allowed by Owners.

135.    21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~

136.    ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~

137.    ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138.    *No drydocking during this Time Charter Trip except in case of emergency* …SEE ADDITIONAL CLAUSE NR 47…………………………………

139.    ……………………………………………………………………………………………………………………………..………

140.    22. Owners shall maintain the gear of the ship as fitted, providing gear (for all *cranes* ~~derricks~~ capable of handling lifts up to *maximum capacity* ~~three tons~~, also *as per description*

141.    providing ropes, falls, slings and blocks *as on board*. If vessel is fitted with *cranes* ~~derricks~~ capable of handling heavier lifts, Owners are to provide necessary gear for

142.    ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for~~

143.    ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The~~

144.    ~~Charterers to have the use of any gear on board the vessel.~~ See Clause No. 23A.

145.    23. Vessel to work night and day, if required by Charterers, and all *cargo gear* ~~winches~~ to be at Charterers' disposal during loading and discharging;

146.    ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,~~

147.    ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles.  If the rules of the~~

148.    ~~port, or labor unions, prevent crew from driving winches,~~ shore *cranemen* ~~Winchmen~~ to be *employed and* paid by Charterers.  In the event of a disabled *cranes or derricks* winch or winches, or

149.    insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned

150.    thereby.

151.    24. ~~It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained~~

152.    ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels,~~

153.    ~~etc.," in respect of all cargo shipped under this charter to or from the United States of America.  It is further subject to the following clauses, both~~

154.    ~~of which are to be included in all bills of lading issued hereunder:~~

155.    ~~U.S.A. Clause Paramount~~ *General Clause Paramount*

156.    ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~

157.    ~~16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~

158. ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~
159. ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~
160. ~~Both to Blame Collision Clause~~
161. ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~
162. ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~
163. ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~
164. ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~
165. ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~
166. ~~owners as part of their claim against the carrying ship or carrier.~~
167. 25. ~~The vessel shall not be required to enter any ice-bound port or any port where lights or light ships have been or are about to be with-~~
168. ~~drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the~~
169. ~~port or to get out after having completed loading or discharging.~~
170. 26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers.  The owners to remain responsible for the
171. navigation of the vessel, **acts of pilots and tugboats,** insurance, crew, and all other matters, same as when trading for their own account.
172. 27. A commission of **1.25** ~~2 ½~~ per cent is payable by the Vessel and Owners to ...**VEGA STAR MARITIME S.A.**. ……………………………..
173. ……………………………………………………………………………………………………………………………………………………
174. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175. 28. An address commission of 2 ½ per cent payable to .......**Charterers** ...........................on the hire earned and paid under this Charter.


**Additional Clause 3A to 108 as attached are to be fully incorporated in this Charter Party.**




### CHARTERERS :                    OWNERS :
COSMOTRADE EXPORTS S. A.          TEKUNMATA SDN BHD




------------------------------------------------------------                    -----------------------------------------------------



This Charter Party is a computer generated copy of the **NYPE** (Reversed 3rd October, 1946) from printed under licence from the Association Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

### CLAUSE 3A. REMAINING BUNKERS

Bunkers on delivery about 620 metric tons up to 670 metric tons IFO  and about 100 metric tons MDO. Bunkers on redelivery to be about same quantity as on delivery.

Value of bunkers to be remitted together with first hire payments.
Prices both ends US$ 325.00 for IFO and US$ 650.00 for MDO.

Charterers have the right to deduct from last sufficient hire payment estimated value of bunkers on redelivery.

Owners have the option to bunker enroute on their own account  provided it will not interfere with Charterers operations.

### CLAUSE 5A. PAYMENT OF HIRE

Payment of hire shall be made by Charterers, in cash every 15 days in advance so  as to be received by Owners or their designated payee in London in United States currency on due date, free of any bank/transfer charges or commissions.

Payment of hire 'in cash every 15 days in advance' shall mean that on the day hire is due Charterers to transfer funds from London to Owners'designated bank account with reference to the vessel's name.

Notwithstanding anything contained herein to the contrary, it is understood that if at any time during the currency of this Charter the hire payment shall become due, on a non-banking day such as Saturday, Sunday, holiday or outside normal banking hours, payment of hire shall be made on a banking day on or before such a due date.

Where there is any failure to make "punctual and regular payment" due to oversight, negligence error or omission on the part of the Charterers or their bankers, the Charterers shall be given by the Owners three (3) banking days (as recognized at the agreed place of payment) notice to rectify the failure and when so rectified within these three (3) days following the Owners' notice, the payment shall stand as regular and punctual payment.

### CLAUSE 15A. NECESSARY DOCUMENT FOR GEAR AND EQUIPMENT

With reference to Clause 15, it is agreed as follows:

Referring to line 97, the lack on board at any time of any necessary documentation attesting to the condition of all gear and equipment and complying with regulations according to vessel's specifications shall be deemed a deficiency, with any loss of time occasioned thereby to be treated as off-hire and any other expenses to be for

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

Owners' account. Referring to lines 97 and 99 the time lost for which hire shall cease (or be suspended) shall also, include – inter-alia:

(i)     from the time the vessel puts back to a port or departs from or interrupts the voyage or is withdrawn from the service of Charterers for drydocking, repairs or other Owners' purposes, until the vessel is again in the same position or at a point equivalent thereto.

(ii)    losses of time due to delay to the vessel or interference with Charterers' use of the vessel by strikes, boycotts or secondary boycotts, manifestations or stoppages in any form on account of the vessel's flag, registry, ownership, manning or wages pattern.

(iii)   if, at any time during the charter, the vessel is rejected by qualified inspector at loading port because of unusual rust and/or rust scaling, any time lost and any expenses incurred in making the vessel suitable for the cargo are to be for the Owners' account.

**CLAUSE 20A**
Deleted

**CLAUSE 23A LIGHTING**
With reference to Clause 23, it is agreed as follows:
Owners to arrange for the working of all time and necessary overtime needed for the efficient operation of the vessel in all respects. Owners agree to provide sufficient lighting on board with ship's lights and light clusters a son board to permit night work at all hatches at one and the same time, free of expenses to the Charterers.

**CLAUSE 29. CONFIDENTIALITY**
All negotiations and fixture to remain strictly private and confidential.

**CLAUSE 30. I.T.F. & ISM CLAUSE + ISPS CLAUSE**
The Owners of the vessel guarantee that the minimum terms and conditions of employment of the crew of the vessel are now or will be prior to presentation of the vessel for delivery and will remain for the period of this charter-party covered by an I.T.F. Agreement of a Bona Fide Trade Union Agreement acceptable by I.T.F.

In the event that the vessel is delayed by reason of boycotts, strikes, labour stoppages or other actions by the ITF against the vessel due to employment conditions, time so lost shall be considered as off-hire, and proven costs directly resulting therefrom are to remain for Owners' account.

During the currency of this Charter Party, the Owners shall procure that both the vessel and "the Company" (as defined by the ISM Code) shall comply with the

2

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Documents of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "the Company" to comply with the ISM Code shall be for the Owners' account.

BIMCO ISPS Clause to apply in full.

**CLAUSE 31. NOTICES OF DELIVERY**
Owners will keep Charterers advised of the itinerary of the vessel promptly and will serve on fixing 3/2/1 days definite delivery notices.

**CLAUSE 32. NOTICES OF REDELIVERY**
The Charterers to give minimum ten (10) days redelivery notice of intended time of redelivery and range. Such redelivery notice to be followed by 7/5 days notices with expected redelivery time and port and one (1) definite notice of redelivery date and port.

**CLAUSE 33. CHARTERERS' INSPECTION**
Charterers to have the option of holding an inspection of the vessel before delivery, at any time, without interfering with the progress of the vessel's construction, at their risk and expenses. Charterers to have the option of holding an inspection of the vessel, at any time between delivery and redelivery, at their risk and expenses. In all cases, Charterers shall tender at least three (3) days advance notice.

In all cases, Owners and Master to give every facility and assistance to carry out this Inspection.

**CLAUSE 34.**
Deleted

**CLAUSE 35.**
Deleted

**CLAUSE 35A. CARGO EXCLUSIONS**
Notwithstanding anything to the contrary contained in the charter, the Charterers agree that the follwing cargoes are excluded from carriage :

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

Sulphur, salt, scraps, motor blocks n turnings, borax, logs, cotton, newsprint, asphalt, pitch, tar, sunflower seeds, expellers, petroleum and its products, pyrites, hides, charcoal, meals (fishmeal, meat meal, soya bean meal, seed meal, bone meal etc), cement, resin, copra, explosives (including black powder, blasting caps, dynamite, tnt, firework etc), livestock, soda ash, acids, dangerous and/or injurious and/or inflammable and/or corrosive cargoes which may damage the vessel or injure the crew, arms, ammunition, nuclear and/or radio active materials or waste,
ammonium nitrates, direct reduced iron, hot briquetted iron, sponge iron, petcoke, naphta, ferro silicon, motor spirit, turpentine, calcium hydroxide, calcium carbide, calcium hydrochloride, palm kernel extration, exparto grass, seed cakes, salt cakes, kaolin or any other clay, creosoted goods, all types of blocks including stone and marble blocks, aggregates, asbestos, mineral sands (incl silica), cargoes not compatible with vessel's capability and contrabank cargoes.

### CLAUSE 36. AGENTS

Charterers undertake to keep Owners informed during the period of this charter as regards the itinerary of vessel and itinerary of vessel and the name of their Agents at all ports of call. Owners' to appoint Owners' agents to attend all Owners' matters. In case Owners unable to arrange same, Charterers to agree to have their Agents to attend such matters with Owners settling with Agents according to Agent's usual husbanding tariff or rate mutually agreed beforehand.

### CLAUSE 37.SEA WATER IN DOUBLE-BOTTOM

Owners to permit sea water to be placed in any water ballast double bottom tanks except Fuel Oil, Diesel Oil and fresh water tanks in order to press tanks upto full capacity to give maximum stability always subject master's approval.

### CLAUSE 38. TRADING EXCLUSIONS

Notwithstanding anything to the contrary contained in this charter, the Charterers warrant that the vessel shall not trade in the following places:

Israel, Lebanon, Syria, Somalia, Turkish occupied Cyprus, Cuba, Namibia, Nicaragua, Angola (including Cabinda), Ethiopia, Albania, Cambodia, Laos, Zaire, North Korea, Norway, Ccos Bay of USA, Slovenia, Montenegro, Croatia, all ex Yugoslavian States, Russian Pacific ports, Haiti, Liberia, Georgia, war zones and/or war risk zones and/or areas where vessels underwriters require payment of additional premium and/or areas precluded by vessel's underwriters and/or areas no recommended by the port of registry of the vessel and /or areas breaching institute warranty limits, and/or area breaching united nations sanctions.

### CLAUSE 39. CERTIFICATES

Vessel to have on board valid certificates, including oil pollution certificates, necessary for the agreed trading limits and such certificates to be maintained throughout the period of charter. Any consequences due to vessel lacking necessary

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

certificates, or if the same should be outdated, to be for Owners' risk and expense. Vessel also to have a board a valid deratization or deratizaton exemption certificate and such certificates to be maintained throughout the period, of the charter and if fumigation is necessary for the purpose of deratization certificate, cost of same and detention to be for Owners' account except as provided in Clause 2.

Owners warrant that vessel possesses valid international tonnages measurement certificate pursuant to the 1969 convention including tonnage certificate required by the authorities in any country to which the vessel may trade.

### CLAUSE 40. SUEZ CANAL TONNAGE CERTIFICATE

Throughout the period of the charter, vessel shall have on board current valid Suez canal tonnage certificate and will so comply with all applicable requirements, regulations and recommendations so as to avoid any delay in transit of canal. Any uplift in tolls, fines or other penalties due to vessel's infringement of SCA requirements or directives under the Charter party or otherwise and all resulting consequences thereof are to be for Owners' account.

Any delay due to non compliance or any lack of proper documentation or equipment according to vessel's specifications is to be treated as off-hire provided that same prevents the full use of the vessel by the Charterers and any expenses incurred thereby to be for Owners' account, unless such non-compliance is due to the default of Charterers, sub-Charterers or their Agents. Should such non-compliance only partly affects the Charterers' use of the vessel then off hire shall be calculated on pro-rata basis.

In the event that time is lost in Owners' obtaining any necessary licenses or permits or similar documents from any authority for Owners' own account, same shall be treaded as off-hire and any extra expenses, including any related to inspections of the vessel or crew by any authority, shall be for Owners' account. Should such non-compliance only partly affects the Charterers' use of the vessel then off-hire shall be calculated on pro-rata basis.

Charterers to give Owners reasonable due advance notice to prepare and to process necessary documents before sending vessel to any port/country where new legislation or additional licenses/permits/documents may be required.

Time lost due to lack of licenses/permits/documents of vessel is for Owners' account, time lost due to lack of licenses/permits/documents of cargo is for Charterers' account.

### CLAUSE 41. CALLING AT U.S. PORTS

Non applicable.

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

### CLAUSE 42. WAR RISK INSURANCE & CREW WAR BONUS

Basic war risk insurance and crew war bonus to be for Owners' account. In the event Charterers employ the vessel in a trade for which there is an additional war risk insurance premium on hull and machinery and officers/crew including blocking trapping insurance to be for Charterers account. Vessel to remain on full hire. Same to be arranged by Owners and to be settled by Charterers with next hire payment after receipt of supporting official vouchers.

Charterers to pay such additional premium based on vessel's current war risk policies but in any case not to exceed that for minimum coverage, under the London Underwritters minimum scale. Orders of Owners War Risk Underwritters are always to be followed.

If war situation becomes serious, Owners have the right to refuse the vessel entering into war zone and Owners and Charterers shall further discuss in good faith on alternative arrangement.

### CLAUSE 43. MASTER AND CREW ASSISTANCE & SERVICES

With reference to Clause 8 of this Charter Party, customary assistance shall mean all types of work and services included in the hire which the Master and the crew would normally do when the ship is trading for the Owners' account, if permitted by local regulations, such as, but not limited to:

    a. Raising and lowering of cranes and/or gangways in preparation for the loading and discharging.
    b. Opening and closing of hatches in connection with loading and discharging, provided local regulations permitted.
    c. Closing and opening of hatches in the event of weather which may adversely affect condition of cargo carried on board during loading and discharging, provided local regulations permitted.
    d. Supervision for loading and discharging and everything related thereto
    e. Maintaining sufficient electric power on all cranes whilst loading and discharging.
    f. Shifting vessel and ballasting/deballasting during loading and discharging and shifting berth(s).
    g. Docking and undocking in connection with loading and unloading cargo and/or bunkering.
    h. Necessary assistance in the vessel's bunkering operation.
    i. Lashing and securing of cargo under deck in case of emergency at sea.
    j. Intermediate cleaning/washing between cargoes making the vessel for the next cargoe(es).
    k. All garbages removal/disposal, custom and/or excise duties on ship's store to be for Owners' account.
    l. Warping alongside berths whenever required.

The Master shall be responsible for the safe keeping of all gear, equipment, and/or stores supplied to the vessel by or for Charterers' account and the Master shall keep a

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

record of all such gear, equipment and/or stores so supplied, Master to maintain same in good condition. Such gear equipment and/or stores to be delivered to the Charterers prior to redelivery of the vessel to the Owners or if required by the Charterers at any time during the charter in like good order and condition as supplied, fair wear and tear always expected.

Other extra work by crew, if any, to be mutually agreed and settled between Charterers and Master directly with prompt extra works bonus for crew.

### CLAUSE 44. CARGO HOLDS CLEANINGS
Vessel's crew will clean cargo holds as required by Charterers provided permitted by shore regulations if in port, against payment which will be agreed between Charterers and Master/Crew.- for sweeping, washing including removal and disposal of dunnage. No payment for the cleaning of the ballasting holds. However Owners will not be responsible for vessel passing cargo hold inspection in all respects and any delay due to vessel not passing cargo hold inspection shall not be considered as off-hire, unless due to obvious lack of maintenance (see also Clause 15A(iii)). When vessel is rejected, crew to clean the vessel immediately upon such declaration and with the utmost dispatch.

No payment is made when vessel is carrying same type of cargo on continuous basis unless cleaning requested by the Charterers.

### CLAUSE 45. ARREST
Should the vessel be arrested during the currency of this charter-party at the suit of any party having or purporting to have a claim against or any interest in the vessel, hire under this charter party shall not be payable in respect of any period during which the vessel is not fully at Charterers' disposal, and any consequential expenses whatsoever shall be for Owners' account, unless such arrest is due to action against Charterers or sub-Charterers or their Agents or the Contractors or the Cargo Shippers or Consignees.

### CLAUSE 46. LOG ABSTRACTS
Master is to forward promptly to Charterers completed log abstracts and port logs in English on the Charterers' forms as provided by the Charterers, for both deck and engine for each passage.

### CLAUSE 47. DRYDOCKING
During the duration of this Charter Party Dry Docking to be carried out only in case of emergency.

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

## CLAUSE 48. CARGO CLAIMS

Cargo claims shall be settled in accordance with the Inter Club New York Produce Exchange Agreement of September 1996 and any subsequent amendments.

Owners are to confirm to Charterers the name of P&I Club into which the vessel will enter and shall remain throughout the whole period of the charter, unless/until is given if there is a change. Upon Charterers' request confirmation of entry to be faxed by P&I Club to Charterers directly, provided the Club agrees to do so. Otherwise Owners shall provide a copy of general confirmation of entry issued by the Club.

## CLAUSE 49. CHARTERERS' FLAG/FUNNEL

Deleted

## CLAUSE 50. STEVEDORE DAMAGE

Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the vessel caused by stevedores provided the Master has notified the Charterers and/or their agents in writing as soon as practical but not later than 24 hours after any damage is discovered. Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent of such damage.

    a) In case of any and all damage(s) affecting the vessel's seaworthiness and/or safety of the crew and/or affecting the trading capabilities of the vessel, the Owners shall immediately arrange for repairs of such damage(s) at Charterers' expense and the vessel is to remain on hire until such repairs are completed and if required passed by the vessel's classification society.

    b) Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option, before or after redelivery concurrently with the Owners' work. In such case no hire and/or expense will be paid to the Owners except and insofar as the time and/or expenses required for the repairs for which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the Owners' work.

## CLAUSE 51. INSURANCE FOR HULL AND MACHINERY

Owners warrant that the vessel is covered by a reputable First Class Insurance for Hull and Machinery and shall remain fully insured throughout the terms of the charter.

Hull and Machinery value: US$.- 7,613,000

As long as the vessel is on hire to Charterers, Charterers to have the benefit of any return insurance premium receivable by Owners from their Underwriters (as and when received from Underwriters) after expiry of the relevant Policy Year by reason of the vessel being in port for extended period qualifying for such returns.

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

**CLAUSE 52. P AND I CLUB**
Charterers to have the benefit of Owners P and I Club cover so far as Club rules permit. See also second paragraph of Clause 48.

**CLAUSE 53. ADDING OFF-HIRE TIME TO THE DURATION**
Deleted

**CLAUSE 54. ARBITRATION**
This agreement shall be governed by English Law and any dispute arising out of this agreement shall be referred to arbitration in London, one arbitrator being appointed by each party in accordance with the arbitration acts 1950 & 1979 or any statutory modification or re-enactment thereof for time being in force. On receipt by one party of the nomination in writing of the other party's, that party shall appoint their arbitrator within fourteen (14) days, failing which the decision of the single arbitrator appointed shall apply.

If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

In the event of the amount of claim and counter claim does not exceed the amount of US$ 50,000 the parties agree to refer any dispute to a sole arbitrator in accordance with the "Small Claims Procedure" on the London Maritime Arbitrators Association.

**CLAUSE 55. REDELIVERY CONDITIONS**
Charterers to redeliver vessel with unclean holds against lumpsum payment if US$ 3,500.00 excluding removal/disposal or dunnages/debris/lashing.

**CLAUSE 56. CLAUSE PARAMOUNT AND OTHERS**
General Clause Paramount, New Both –to-Blame Collision, New Jason clause, CONWARTIME 1993, as attached hereto, are to be considered part of this time Charter Party and same are to be incorporated in the Bills of Lading issued hereunder.

**CLAUSE 57. METRIC TONS**
Wherever tons are referred to in this charter party, same are understood to be metric tons unless otherwise stated.

**CLAUSE 58. DEVIATION**
Vessel has the liberty to deviate for the purpose of saving life and/or property and to tow or assist vessel(s) in distress. Such operations not to be deemed a deviation under this Charter Party, but all salvage attribution thus payable to the vessel to be equally divided with Charterers, after proper deduction of expenses, if any including Captain's and Crew's shares incurred in this respect.

9

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

**CLAUSE 59. FUEL OIL**
Wherever the word "fuel" appears in this time charter party, same is understood to mean "bunkers". Fuel Oil means Fuel Oil of 180 CST. See also Clause 78.

**CLAUSE 60. LAYING-UP**
Deleted

**CLAUSE 61. SLOW STEAM**
Charterers have the option to slow steam vessel at any time during the course of the charter party on the basis of speeds and consumptions which to be advised but always within a range of safe, operable and harmless to the engine.

**CLAUSE 62. COMPLIANCE WITH INTERNATIONAL CONVENTION**
In the event of the vessel being prevented from or unable to perform in accordance with the terms of this charter party, by reason of:

A/ action on the part of relevant authorities resulting from non-compliance with any compulsory applicable enactments enforcing all or part of any of the International Conventions in force.

B/ Labour stoppages in services essential to the operation of the vessel owing to her flag or ownership or management or the conditions of employment on board.

Any loss of time in the event A/ and/or B/ shall result in the vessel being off-hire and shall be dealt with in accordance with the off-hire clause.

It is understood that, if necessary, vessel will comply with any safety regulations and/or requirements in effect at ports of lading and/or discharging. Although other provisions of this charter make it the responsibility of the Owners, it is agreed that should the vessel not meet safety rules and regulations, Owners will make immediate corrective measures and any stevedores stand-by time and other expenses involved, including off-hire, will be for Owners' account.

Vessel to be delivered with valid deratization certificate on board and same to remain valid throughout the currency of this charter-party.

**CLAUSE 63. VESSEL'S DESCRIPTION**

## M/V Alam Sempurna

| | |
|---|---|
| Type | SD BC Dry Bulk Carrier |
| Built | April 1984 Hitachi Zosen Corp., Hiroshima Works, Innoshima |
| Flag | Malaysia |
| Class | ABS |

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006


SDWT         28,094 mt
SDFT         10.609 mtrs
GRT          17,065
NRT          10,334
LOA          178.22 mtrs
TPC          35.38 mtrs
Beam         23.10 mtrs
Holds        5
             1) 4709.78 / 4506.67
             2) 7736.56 / 7473.05
             3) 6982.81 / 6864.11
             4) 7785.63 / 7520.44
             5) 7520.02 / 7242.80
Hold Dimensions   MAX Fore x Aft x Length (M)
             1)  5.60  x 16.40 x 19.80
             2-4) 16.70 x 18.00 x 26.40
             5)  18.00 x 12.70 x 26.40
Hatches          MACGREGOR JACK-KNIFE FOLDING
             1)  12.O X 11.48 M (L X B)
             2-4) 19.2 X 11.48 M
             5)  17.6 X 11.48 M
Hold Tanktop Strengths  No 1-5) ALL 22.00 MT/SQM
             UPPER DECK - 3.12 MT/SQM
             HATCH COVER - NO 1-5) ALL 1.75 MT/SQM
Cranes           4x 25mt Electro-hydraulic
             No. 1 Aft Of Hatch No.1 25mt 10.30m at 25 deg
             No. 2 Aft Of Hatch No.2 25mt 10.30m at 25 deg
             No. 3 Aft Of Hatch No.3 25mt 10.30m at 25 deg
             No. 4 Aft Of Hatch No.4 25mt 10.30m at 25 deg
Grabs        NA
Grain/Bale   34,734 / 33,607 cbm
ITF          Yes
WWF          NA
AHL          Yes


Speed and consumption in good weather conditions up to BF 4 and DSS 4
and no negative swell/no adverse current.
             About 13.0K on about 19MT (Laden) IFO
             (ISO 8217 1996 (E) GRADES ISO-F-RME 25 (180 CST)
             + about 2MT MDO (ISO 8217 1996 GRADES ISO-F-DMB)

Consumption in Port
Diesel Generator - idle about 1.13 mt/day
Diesel Generator - gears working about 8 hrs/day about 1.80 mt/day
Diesel Generator - gears working about 24 hrs/day about 3.10 mt/day

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

Vessel has the liberty to use MDO in her main engine on entering/leaving ports, maneuvering in canal/river/shallow/narrow/busy waters.

Hull and Machinery Value      USD7,613,000.00
Underwriters                  JERNEH INSURANCE BHD MALAYSIA
P and I Club                  SKULD, OSLO
Call Sign            9MBH3
Inmarsat C GMDSS     453 327 210
Inmarsat B Tlx       453301510
Inmarsat B Tel       NA
Inmarsat B Fax       NA
Inmarsat B Data      NA
Inmarsat B HSD 64kbits  NA
All details about

Owners: Tekunmata Sdn Bhd
         C/O PACIFIC SHIP-MANAGERS SDN BHD
         LEVEL 17, PJ TOWER,
         NO.18, JALAN PERSIARAN BARAT, OFF JALAN TIMUR,
         46050 PETALING JAYA, SELANGOR, MALAYSIA

AA/ - Owners guarantee vessel is first class according to lloyds register or equivalent and tight, staunch and strong and in every respect fitted for charterers trade/cargo and will so be maintained whilst under this charter party

BB/ - The requirements of the international safety management (ism) code are hereby incorporated into the terms of this charter party. Owners warrant that on and after 1st April 1998, a Safety Management System (SMS) in accordance with the ism code will be in operation both on shore and on board the vessel. Owners further warrant that on and after 1st July 1998 they ( or "the company") as defined by the ism code shall have a valid Safety Management Certifcate (SMC).

CC/ - Owners guarantee that the vessel is not black listed/boycotted or arrested due to vessels flag/ownership/crew employment/age/past trading in countries under this cp

DD/ - Vessel's cargo gear as described by owners is in good working condition and has capacity of 25mt swl each crane vessel's full operational gear is at any time during loading and discharging free of charge at charterers disposal.

EE/ - On delivery owners guarantee that vessel's holds are clean/free of smell/swept/washed down by fresh water and dried up and holds/hatch are free of any loos rust  scale/paint scale and any residues of previous cargoes and any obstructions/obstacles/lashing system are removed from vessel's holds/hatches/deck

FF/ - Owners guarantee that vessels hatch covers are watertight throughout this charter and if any hatch cover found defective, same to be rectified at Owners' time and expenses to Charterers satisfaction, unless caused by perils of the sea-act of God.

12

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

Charterers also have the right to carry out hose test or in Charterers' option ultrasonic testing on all hatches at any time during this charter.

PART 1:
-------
1. NAME/EX-NAME/TYPE OF VESSEL:
   M/V ALAM SEMPURNA / EX-SAINT LAURENT / BULK CARRIER
2. DWAT METRIC TONS SUMMER/WINTER INCL DRAFT:
   28,094 MT SUMMER 10.609 M / 27,311 WINTER 10.388 M
   TPC (MT) SUMMER: 35.39
   FRESHWATER ALLOWANCE: 0.244M
3. FLAG: / PORT OF REGISTRY: / REGISTRATION NO.:
   MALAYSIAN / PORT KELANG / 362131
4. WHERE/WHEN (YEAR/ MONTH) VESSEL WAS BUILT:
   JAPAN / APRIL 1984
5. L.O.A.: MTRS / L.B.P.: MTRS / EXTREME BREADTH: MTRS
   178.22 M / 167.64 M / 23.10 M
   DEPTH MOULDED: 14.75 M
6. INTERNATIONAL GRT/NRT: 17,065 / 10,334
   SUEZ CANAL TONNAGE GROSS/NETT: 17,831.34 / 14,316.90
   PANAMA CANAL TONNAGE GROSS/NETT: 18,172.00 / 14,316.00
7. NAME AND NATIONALITY OF MASTER/NATIONALITY OF CREW: (ENCLOSED)
8. P AND I CLUB: SKULD, OSLO
9. HULL AND MACHINERY VALUE FOR INSURANCE PURPOSES IN USD7,613,000
   HULL UNDERWRITERS: JERNEH INSURANCE CORPORATION SDN BHD
10. CLASSIFICATION INCL NOTATION SOCIETY/CLASS:
    +A1 E BULK CARRIER / ABS
    VESSEL EQUIPPED/CERTIFIED ACCORDING TO B/C CODE APPENDIX 'B':
    ICE-STRENGTHENED/ICE CLASS:
11. CUBIC BREAKDOWN OF ALL COMPARTMENTS GRAIN/BALE:
    (Embedded image moved to file: pic31477.jpg)
12. NUMBER OF DERRICKS/CRANES CAPACITY S.W.L.: REFER BELOW
    OUTREACH OF CRANES: REFER BELOW
    LOCATION OF CRANES: REFER BELOW
    GRAB FITTED: NOT FITTED BUT GRAB SUITABLE
    (Embedded image moved to file: pic00298.jpg)
    (Embedded image moved to file: pic04467.jpg)
13. NUMBER OF HOLDS INCL.CLEAR UNOBSTRUCTED DIMENSIONS:
    HEIGHT FM TANKTOP TO UNDERDECK:  MTRS
    HEIGHT FM TANKTOP TO HATCHCOVER: MTRS
    ARE THERE ANY SLOPES/HOPPERS:
    (Embedded image moved to file: pic12813.jpg)
    (Embedded image moved to file: pic27983.jpg)
14. NUMBER OF HATCHES AND DIMENSIONS: (REFER NO.11)
    WORKABLE LENGTH BETWEEN FORE-PART OF 1ST AND AFT-PART LAST HATCH:

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

15. STRENGTH ON TANKTOP:  T/SM, TWNDECK:   T/SM
    WEATHERDECK: T/SM,  HATCHCOVERS: T/SM
    ALTERNATE HOLDS LOADING: NO
    MAXIMUM PERMISSABLE LOADCAPACITY PER HOLD:
      (Embedded image moved to file: pic28684.jpg)
16. HOLDS/HATCHES/WEATHERDECK SPACE WITHOUT ANY OBSTACLES:
    ARE VESSEL'S HOLDS/TWEENDECKS FREE OF ANY OBSTRUCTIONS:
    PLS ADV IF ANY GIRDER OR CENTERLINE BULKHEAD:
17. TYPE OF HATCHCOVERS WEATHERDECK/TWEENDECK: NONE
18. SUEZ CANAL FITTED: REVERTING
19. IS VESSEL SUITABLE FOR GRAB DISCHARGE: YES
    IS VESSEL GRAINFITTED: YES
20. IS VESSEL ITF APPROVED: YES
21. CO2 FITTED IN HOLDS: NO
22. PERMANENT/COLLAPSIBLE STANCHIONS ON DECK: REVERTING

PART 2:
-------
 1. SPEED LOADED/BALLAST:
    IN PORT IDLE / GEAR WORKING PER 24 HOURS:
    TYPE OF BUNKERS:ASPER MAIN TERMS
 2. FUEL CAPACITY OF BUNKERS IN METRICTONS:
    IFO: 1819.78 cbm bss 100pct      MDO: 142.0 cbm bss 100pct
 3. CONSTANTS INCLUDING UNPUMPABLE BALLAST WATER MAX BUT
EXCL FW:280mt
 4. FRESHWATER ON DELIVERY MAX:
 5. NAME/DOMICILE OF ORIGINAL OWNERS: TEKUNMATA SDN BHD
 6. NAME/DOMICILE OF VESSEL'S MANAGERS: PACIFIC SHIP-MANAGERS
SDN BHD
    INTERNET E-MAIL: / CABLE ADDRESS: dry@psm.com.my
 7. NAME/DOMICILE OF VESSEL'S DISPONENT OWNERS (IF ANY): N/A
 8. VESSELS CALL SIGN: 9MBH3
    VESSEL'S CONTACT NOS:
    INM-C: 453301510
    TEL:
    FAX:
    EMAIL: alamsempurna@ship.rydex.com.sg
 9. ELECTRIC VENTILATION: no
    AIRCHANGES/HOUR BSS EMPTY HOLDS: REVERTING
10. VSLS IMO REGISTRATION NUMBER: 8312071
11. LAST THREE CARGOES/CHRTRS: BULK MAIZE / ROCK SALT / BULK
WHEAT
12. LAST DRYDOCK: FEB 2004
13. LIGHT WEIGHT OF VESSEL: 6388 MT
14. AIRDRAFT: REVERTING
15. MAX DISTANCE BTW TOP OF HATCHCOAMING AND WATERLINE IN
BALLAST CONDITION (EXCL ANY HOLDFLOODING) - LIGHT BALLAST:
REVERTING

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

16. ARE THERE ANY LIMITATIONS DESCRIBED IN VSLS LOADING
MANUAL/CARGO SECURING MANUAL IN RESPECT OF STOWING STEEL
PRODUCTS: REVERTING
IF YES, PLS ADV WHICH LIMITATIONS:
17. ANY COLLISION/STRANDING/FIRE/GENERAL AVERAGE/ACCIDENT/
DETENTION BY PORT STATE CONTROL DURING LAST 12 MONTH:
NONE
IF YES, PLEASE STATE IN DETAILS OF INCIDENT/ACCIDENT/NATURE
OF PSC DETENTION OBSTRUCTING VSLS CLASSIFICATION:
18. VSL FREE FROM OF ANY ENCUMBRANCES A/O ANY MARITIME LIEN:
YES
19. FULL BANKING DTLS OF OWS FOR REMITTANCE OF HIRE:
BANK OF NEW YORK, NEW YORK
FOR ACCOUNT OF OCBC BANK (M) BERHAD
ACCOUNT NO: 8033232609
SWIFT CODE: IRVTUS3N
FAVOURING MALAYSIAN BULK CARRIERS BERHAD
US DOLLARS ACCT NO: 701-112355-6
SWIFT CODE: OCBCMYKLXXX
(REF: MV ALAM SEMPURNA / CHTR'S NAME CP ...)
20. PLS SEND
VESSEL'S G/A PLAN AND FOLLOWING VALID CERTIFICATES TO BE
FAXED/MAILED TO CHARTERERS MESSRS............AS FOLLOWS:
A) 1 COPY GENERAL ARRANGEMENT PLAN (MAIL COPY IF
REQUESTED)
B) 1 COPY CARGO CAPACITY PLAN (MAILCOPY IF REQUESTED)
C) 1 COPY SUEZ TONNAGE CERTIFICATE (REQUESTED BY FAX)

**CLAUSE 64. PILOT'S AND HOLD'S LADDERS**
Vessel to be equipped with pilot's and holds' ladders.

**CLAUSE 65. FLAG CHANGE/CREW NATIONALITY**
Deleted

**CLAUSE 66. WAR CANCELLATION**
In the event of any warlike operation involving minimum two of the following
countries: U.S.A., United-Kingdom, Russia, the Peoples's Republic of China, France,
Germany, South Korea, Japan directly affecting vessel's trading under this Charter
Party, both parties shall mutually discuss as to cancel or continue this Charter Party.

**CLAUSE 67. GUARANTEED SPEEDS & CONSUMPTIONS**
The Owners stipulate that the vessel is capable of maintaining and shall remain
capable of maintaining throughout the period of this charter party on all sea passages
from seabuoy to seabuoy with wind upto and including force 4 as per Beaufort Scale
(speed shall be determined by taking the total hours at sea as shown in the log books)

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

guaranteed speeds and guaranteed daily consumptions as described in Clause 63. The period during which the vessel performs under the following conditions shall be excluded from performance calculations:

1. Any time during which speed is deliberately reduced to comply with Charterers' order/requirements.
2. Any time during which the vessel's speed in deliberately reduced for reasons of safety while navigating within narrow waters having due regard to vessel's size and draft or when assisting a vessel in distress or when saving life or property.
3. Any completed sea passage of less than twelve (12) hours.
4. Any period after continuous lay-up or idling or more than thirty (30) days until next drydocking /hull cleaning provided vessel remains on hire throughout the lay-up or idling period, but same without prejudice to Owners duty to maintain the vessel remains the vessel, her machinery and equipment in a good condition.

Unpremeditated stops not due to wheather and sea conditions at the sea shall be counted as off-hire in full and shall be excluded from total hours at sea when calculated the average speed.

## CLAUSE 68. SMUGGLING
Any delay, expenses and/or fines incurred on account of smuggling to be for Charterers account, if caused by Charterers and/or persons appointed by Charterers, and to be for Owners account if caused by Owners, Officers and/or Crew and/or persons appointed by Owners.

## CLAUSE 69. WATCHMEN
Watchmen for vessel to be for Owners account if local regulation permit and watchmen for cargo to be for Charterers account.

## CLAUSE 70. RELEASE OF CARGO WITHOUT BILL OF LADING
Onwers to allow Charterers to discharge cargo without presentation of Original Bills Of Lading against Charterers providing Onwers with Letter of Indemnity in accordance with P and I Club form and wording before discharge. The Letter of Indemnity to be signed by Charterers only. The Letter of Indemnity to be issued on Charterer's corporate letter head, ink-signed by Charterer's 2 authorised signatories giving names and designations and stamped with Charterer's corporate stem.
The authorised signatories must be holding a managerial position in Charterer's office.

The Letter of Indemnity to be faxed to Owners along with a signed copy of the Bills of Lading prior vessel arriving at the discharging ports. The original Letter of Indemnity to be couriered to Owner immediately thereafter.

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

**CLAUSE 71. COMMUNICATION WITH CREW**
The Master the Chief Engineer and all deck officers including bosun are to be able to speak and understand English.

**CLAUSE 72. COMMUNICATION/VICTUALLING/ENTERTAINMENT**
The vessel to be equipped with Inmarsat (telex) and facsimile transceiver. Charterers to pay Owners a lumpsum of US Dollars 1,300.00 per month or prorata to cover communications, victualling and entertainment expenses.

**CLAUSE 73. LIGHTENING**
With regard to lightening, the following to apply:
A.    Vessel to lie alongside another vessel/coasters/lighters/floating cranes at a safe dock or wharf or place (including safe anchorage) for transhipment and/or loading and/or discharge of the cargo and/or for bunkering, if so ordered by the port authority or when or when such operation in customarily carried out at the port. Such operation to be carried out always always subject to good weather, smooth and calm sea, slight wind and current when Master thinks fit, under the supervision of Master regarding the general safety, who may at any time order the other vessel/coasters/lighters/floating cranes away from his vessel or remove his own vessel at Charterers' time and expenses including tug services if Master considers the double banking by ship's own propelling is risky, meanwhile Charterers to take normal customary precaution to Master's satisfaction for such operation. In any event sufficient fenders to be supplied by Charterers at their time and expense to the satisfaction of the Master.
B.    Charterers to have the privilege of ordering vessel to come alongside another vessel or vice versa, in order to transship load or discharge the cargo or to supply bankers at their convenience. However, Charterers to supply extra fenders and/or securing materials, if necessary, up to Master's satisfaction, and indemnify Owners/vessel against all cargo claims subsequent to such operation. Charterers also to indemnify Owners from any additional insurance premium as charged by vessel insurers to cover additional risks for vessel, loss of hire and/or shipowners liabilities if not well covered by Owners' ordinary coverage under P and I Club arising from such operation, and Charterers to give Owners due advance notice of their intention to perform such operation advising approximate type and quantity of cargo involved, the other vessel concerned, destination of cargo and location of operation. Charterers, however, to intemnify Owners from any damage to vessel, claim from the other alongside vessel and/or loss of hire resultantly incurred from the unsafety of the operation and/or any commission occasioned by Crew members of both vessels..
Any delay occasioned due to operation of ship-to-ship transferof cargo which is not attributable to the vessel/Owners shall not be counted as off-hire.

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

### CLAUSE 74.
Deleted

### CLAUSE 75. JOINT ON-HIRE / OFF-HIRE SURVEY
Owners and Charterers are to hold a joint on hire and off hire survey. The Owners
will bear all expenses of the on hire survey including loss of time if any and the
Charterers shall bear all expenses of the off-hire survey including loss of time, if any,
at the rate of hire per day or pro rata.

Delivery time and redelivery time to be local, but converted to G.M.T. for means of
calculation of on-hire time.

### CLAUSE 76
Deleted

### CLAUSE 77. DEDUCTIONS FROM HIRE PAYMENTS
A)  Charterers have the right to withhold from charter-hire during the period of
this charter such amounts due to them for off-hire and Owners'
disbursements, but with proper supporting statements to be sent to Owners
promptly. Chrterers have the right to withhold from charter hires Owners'
estimated advances and disbursements.

B)  Charterers to have the option of deducting from last hire payments the
price of the estimated bunkers on redelivery, price of bunkers on
redelivery to be as per invoices from last Charterers/Sub-Charterers.
Charterers have the liberty to retain sufficient funds from last hire
payments in order to cover Owners' disbursements and if not sufficient fm
last two hire payments. Quantity on deliver/redelivery to be established by
joint bunker survey. Settlement of final accounts shall be made upon
receipt of vouchers from various ports of call.

### CLAUSE 78. QUALITY OF BUNKERS

During the course of this Charter Party, Charterers will supply the vessel with:

Fuel Oil to conform to ISO 8217 (1996 (E) GRADES ISO-F-RME 25 CST 180).

Diesel oil to conform to ISO 8217 (1996 GRADES ISO-F-DMB).

### CLAUSE 79. TAX CLAUSE

All taxes and/or dues on the vessel and/or cargo and freight arising out of cargoes
carried or ports visited under this charter party shall be for Charterers' account.

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

**CLAUSE 80.**
Deleted

**CLAUSE 81. U.S./KOREAN TRADE – UNIQUE BILL OF LADING IDENTIFIER CLAUSE**
Non applicable.

**CLAUSE 82. GRAB DISCHARGE**
Owners warrant that the vessel is suitable for grab discharge, as far as a single decker bulk carrier of this type can be. However unit weight of bulldozers will not exceed vessel's tanktop strength and her operation always under Master's supervision and satisfaction.

**CLAUSE 83.**
Deleted

**CLAUSE 84. DEVIATION DUE TO ACCIDENT/BREAKDOWN**
Should the vessel be put into any port other than those instructed by the Charterers by reason of accident or breakdown or for the purpose of landing any injured or sick Officer, including Master, or members of the crew, the port charges, pilotages, and any other expenses including loss of time shall be born by Owners, also should the vessel be put back whilst on voyage by way of the above mentioned reasons, the hire suspended from the time of her putting back until she is again in the same or equally favorable position and the voyage resume therefrom.

**CLAUSE 85. VACCINATION**
Officers and crew to comply with vaccination and sanitary regulations in all ports of call and corresponding certificates to be available on board. Any detention and/or fines resulting from not having certificates on board to be for Owners' account.

Owners to arrange at their expense that the Master, Officers and crew of the vessel hold valid vaccination certificates against cholera and the yellow fever and small pox if and where required throughout time charter period.

Owners to comply for their account with all sanitary regulations at ports of call including water treatment of cholera where required.

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

## CLAUSE 86. RETURN OF CHARTER HIRE

Should the vessel be lost, except the vessel being pirated, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once.

## CLAUSE 87. CARGO TEMPERATURES

Non applicable

## CLAUSE 88. PURCHASE OPTION

Non applicable

## CLAUSE 89.

Deleted

## CLAUSE 90. WHEATHER ROUTING

If Charterers are appointing Ocean routes or similar institutions, Master to follow their instructions/requirements carefully.

For the purpose of this Charter Party "good weather conditions" shall be defined as weather conditions in winds not exceeding Beaufort Force 4. Evidence of weather reports to be taken from ship's deck log and Oceanroutes report. In case of discrepancies between the deck logs and Oceanroutes report, the Oceanrourtes report to be taken as ruling.

## CLAUSE 91. SUPERCARGO/PORT CAPTAIN

The Charterers or their Supercargo(es) are entitled to call for speed trials, in ballast or loaded condition, shall indemnify the Owners for any extra expenses in this connection and vessel remaining fully on-hire. The Charterers and/or their Supercargo(es) may install and remove, at their expense, such instruments as may be required to check the vessel's speed and revolutions of the main engine.

The Charterers and/or their Supercargo(es) shall have free and reasonable access to the whole vessel including bridge, holds and engine room, and also to all vessel's tanks, including but not limited to, bunker, lubricating oil, sludge, ballast, and fresh water tanks. Whenever required, the Master must bring the vessel into even trim to ensure correct bunker soundings, provide same is practically possible. The Charterers and/or Surveyors to have free and reasonable access to the vessel's deck-log and engine-log books, tank plans, calibration scales and/or other plans as requested and are allowed to make copies of the original log books on board or ashore.

Owners to supply accommodation/victualling to Charterers Supercargo(es) in Owners' cabin only during stay of vessel in load and/or discharge prt (in order to be able to assist/follow best possible for loading/discharging operations).

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

**CLAUSE 92. SIGNING BILLS OF LADING**
With reference to Clause 8, Master to sign Bills of Lading at loading port(s), unless he is instructed by Charterers to sign only Mate Receipts, in which case Bills of Lading to be signed by Charterers or their Agents in strict conformity with Mate Receipts.

In case Bills of Lading signed by Charterers of their Agents same to be in strict conformity with Mates Receipts and draft copy of Bills of Lading to be approved by Owners /Managers before issuing .

In case of "Clean on Board" Bills of Lading is Master's right to reject any damaged cargo, prior loading of same on board, affecting the issuance of "Clean" Bills and Shippers/Charterers to replace same with sound cargo at Charterers / Shippers time and expense. In case Charterers request Master to load such cargo then relevant remarks to be inserted in Bills of Lading.

No liner Bills of Lading.

**CLAUSE 93. OWNERSHIP**
Owners warrant that vessel covered by this Charter Party is not registered, owned or controlled by Cuba, Iraq, Libya, North Korea, Vietnam, Yugoslavia, Montenegro, Serbia.

Owners shall be liable to charter for any damages resulting from Owners' failure to comply with above warranty.

**CLAUSE 94. FITTINGS/PADEYES**
Charterers to have the option to weld padeyes and/or lashing/securing devices/points at their expense and subject to the Master's approval which is not to be unreasonably withheld. Charterers to remove all such padeyes and/or their lashing/securing devices/points prior to redelivery if required by Owners.

**CLAUSE 95. DOUBLE BANKING**
Charterers may carry-out lightening/discharge or top-off operation with vessel's holds ready for same, at their risk and expense by causing other vessel to be double-banked against vessel provided such action is carried out at a customary and safe place where such operations normally take place, and the operations are carried out to Master's satisfaction. Charterers will supply fenders for the operation if necessary to Masters' satisfaction, however fenders on board to be made available by vessel. Any additional insurance premium payable for the operation to be reimbursed by Charterers against supporting from Owners.
If any time during the operation, the Master considers it unsafe to continue the operation, Master may order the other vessel to cast off and move away. It is understood that the Master will always act reasonably in this respect.

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

Master and crew to render all customary assistance to carry out these activities as
though carrying out for their own account.
See also Clause 73 paragraph A.


### CLAUSE 96. CANAL
Vessel in full all requirements for passage for the Suez Canal and have necessary
valid Certificates on board on delivery and throughout the currency of this Charter
Party. See also Clause 40.


### CLAUSE 97. STEEL CARGOES
Should any steel cargoes be carried ,Owners have the option to arrange loading and
discharging (pre) condition survey by competent surveyors approved by Owners' P&I
Club at Owners' expenses.

Surveyors remarks to be claused in Mate's Receipts. If cargo of an unfinished nature,
survey not to be required.


### CLAUSE 98. CALLING AUSTRALIA
Non applicable


### CLAUSE 99. HAMBURG RULES
Neither the Charterers nor their Agents shall permit the issue of any Bill of Lading,
waybill or other document evidencing a contract of carriage (whether or not signed on
behalf of the Owners or on the Charterers behalf or on behalf of any sub-Charterers)
incorporating, where not compulsorily applicable, the Hamburg Rules or any other
legislation giving effect to the Hamburg Rules or any other legislation imposing
liability in excess of Hague or Hague/Visby Rules. The Charterers shall indemnify the
Owners against any liability, loss or damage which may result from any breach of the
foregoing provisions of this clause.


### CLAUSE 100. CARGO GEAR
Vessel's cargo gear and all other equipment shall comply with the regulations of the
countries in which the vessel will be employed and Owners are to ensure that the
vessel is at all times in possession of valid and up-to-date certificate to comply with
such regulations. If stevedores, longshoremen or the workmen are not permitted or
refuse to work due to failure of Master and/or Owners and/or Owners' Agents to
comply with the aforementioned regulations or because vessel is not in possession of
such valid and up-to-date certificates, the Charterers may suspend hire for the time

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

thereby lost and Owners to pay all expenses incurred incidental to and resulting from such a failure.


## CLAUSE 101. MAINTENANCE OF VESSEL'S GEAR & EQUIPMENT

All cargo handling gear and equipment including derricks/cranes/winches to be maintained in good working order by Owners. In the event of a breakdown or malfunction of derrick(s), crane(s), winch(es) by reason of damage, disrepair, disablement or insufficient power, the hire to be reduced pro-rata for a period of such inefficiency in relation to the number of gangs-affected and any stevedore standby costs incurred are to be for Owners' account. Alternatively, Owners have the option to hire shore gears, in which case Owners to pay for the relevant cost but vessel to remain fully on hire.


## CLAUSE 102. DANGEROUS CARGO

Notwithstanding provisions of Clause 35A. Charterers always to have the option to load dangerous cargoes up to 1000 Metric tons provided same is packed, labelled, loaded, stowed, lashed, secured, dunnaged and discharged in accordance with IMO as well as local/international regulations and always excluding IMO classes 1 and 7.


## CLAUSE 103. FUMIGATION

In fumigation is necessary due hereto or due to anything for which Owners are responsible, cost of same and detention to be for Owners account, as well as cost to unload and reload the cargo, if any on board when fumigation to take place.


## CLAUSE 104. DECK CARGOES

Deck cargoes to be loaded, stowed, secured, and discharged at Charterers' expenses and risk but under Masters' supervision. In order to obtain maximum deckload under consideration of the safety of the vessel and good practice in the trade, Charterers may require to press fuel, water and ballast tanks, however, Master to have final decision hereon.

Charterers must describe following remarks on the Bills of Lading when the vessel loads cargo on deck: "carried on deck at Shippers' risk without liability to vessel/Owners for loss or damage howsoever caused."


## CLAUSE 105. LOADING OF BULK CEMENT

Deleted


## CLAUSE 106. REQUISITION

Should the vessel be requisitioned by any governmental authority during the currency of this Charter Party, vessel shall be put off-hire hereunder for the period of such requisition and any hire or other compensation receivable for such requisition and any

ADDITIONAL CLAUSES TO M/V "ALAM SEMPURNA"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 25TH AUGUST 2006

hire or other compensation receivable for such requisition shall be Owners' account. If the period of requisition is, or is estimated to be, more than sixty (60) consecutive days, Charterers have the option of canceling this Charter Party.

## CLAUSE 107. CHANGE IN APPLICABLE LAWS & REGULATIONS

If the following circumstances affects the performance by Owners of this Charter, Charterers and Owners shall discuss the situation in good faith to settle down the problem:

    (A)    When the existing laws and regulations which apply to this charter contract have been changed or revised by the relevant authorities during the currency of this charter.

    (B)    When any laws and regulations have come into force during the currency of this charter.

## CLAUSE 108.

Charterers  to have the option to hose test or ultrasonic test the hatch covers at the loading ports in their time and at their expense. If the hatch(es) are found not to be watertight, the Owners will immediately take all the necessary steps and make all the necessary arrangements  in order to make the hatch covers watertight. If after three days of first failing the hose and/or ultrasonic test the hatch covers are still found not to be watertight the Charterers shall have the option of cancelling this Charter Party.

## U.S. CUSTOMS ADVANCE NOTIFICATION/AMS CLAUSE FOR TIMECHARTER PARTIES

Non applicable.

Drawn up  on the 25th August 2006

CHARTERERS                                          OWNERS

# EXHIBIT 3

## 1ST HIRE STATEMENT

| | | | | | |
|---|---|---|---|---|---|
| **VESSEL** | M/V LONDON BRIDGE | | **CHARTERERS** COSMO TRADE | | |
| **CP DATED** | | | | | **MT** |
| **Delivery** | 12/20/2007 1000 HRS GMT | | **Delivery Bunkers** | IFO | 725.700 |
| | | | | MDO | 9.000 |
| **Redely** | 1/27/2008 1000 HRS GMT | | **Redelivey Bunkers** | IFO | 725.700 |
| | | | | MDO | 9.000 |
| **Hire Rate** | 68,000 USD | | **IFO PRICE** | 490.00 USD | |
| | | | **MDO PRICE** | 780.00 USD | |

| | | | | | |
|---|---|---|---|---|---|
| **Total No of days on Hire** | | | 38 | | |
| **Hire** | 38 Days | At USD | 68,000 | | 2,584,000.00 |
| **Commission** | | | 5.000% | 129,200.00 | |
| **Bunkers on Dely** | | | | | |
| IFO | 725.700 MT | At USD | 490.00 | | 355,593.00 |
| MDO | 9.000 MT | At USD | 780.00 | | 7,020.00 |
| EST BUNKERS ON REDELY | | | | | |
| IFO | 725.700 MT | At USD | 490.00 | 355,593.00 | |
| MDO | 9.000 MT | At USD | 780.00 | 7,020.00 | |
| C/V/E | | | 1,250.00 PM | | 1,583.33 |

TOTAL OFF HIRE AT ILLICHEVYSK AS PER ATTACHED
SPREADSHEET

| | | | | | |
|---|---|---|---|---|---|
| | 3.53631 DAYS | AT USD | 68,000.00 | 240,469.08 | |
| **COMMISSION** | | | 5.00% | | 12,023.45 |

COST OF HIRING SHORE CRANE'S AT ILLICHEVYSK                    0.00
PLEASE PROVIDE SUPPORTING EVIDENCE

| | | |
|---|---|---|
| **CASH** | 1,332,063.00 | |
| | **2,064,345.08** | **2,960,219.79** |
| **Balance in Owners Favour** | | 895,874.71 |

**OWNERS FULL STYLE BANKING DETAILS AS FOLLOWS**

NORDEA BANK FINLAND PLC
LONDON BRANCH
SWIFT: NDEAGB2L
ACCOUNT NO.: 54105059
IBAN: GB57NDEA40487854105059
CREDIT OF: L BRIDGE LIMITED
COVER THROUGH J.P. MORGAN BANK NEW YORK
SWIFT: CHASUS33

**M.V. LONDON BRIDGE / COSMOTRANS OFFHIRE AT ILI**

| | | | |
|---|---|---|---|
| 0830HRS 21/12/07 TO 1215HRS 21/12/07 | 0.03906 | $68,000.00 | 490 |
| 1400HRS 21/12/07 TO 1910HRS 21/12/07 | 0.05382 | $68,000.00 | 490 |
| 2030HRS 21/12/07 TO 2400HRS 21/12/07 | 0.07292 | $68,000.00 | 490 |
| 0000HRS 22/12/07 TO 0030HRS 22/12/07 | 0.01042 | $68,000.00 | 490 |
| 0200HRS 22/12/07 TO 0730HRS 22/12/07 | 0.1146 | $68,000.00 | 490 |
| 0830HRS 22/12/07 TO 1235HRS 22/12/07 | 0.0425 | $68,000.00 | 490 |
| 1405HRS 22/12/07 TO 1640HRS 22/12/07 | 0.02691 | $68,000.00 | 490 |
| 1640HRS 22/12/07 TO 0900HRS 23/12/07 | 0.68056 | $68,000.00 | 490 |
| 0900HRS 23/12/07 TO 1245HRS 23/12/07 | 0.1172 | $68,000.00 | 490 |
| 1410HRS 23/12/07 TO 1930HRS 23/12/07 | 0.0556 | $68,000.00 | 490 |
| 2035HRS 23/12/07 TO 2400HRS 23/12/07 | 0.0356 | $68,000.00 | 490 |
| 0000HRS 24/12/07 TO 0040HRS 24/12/07 | 0.007 | $68,000.00 | 490 |
| 0205HRS 24/12/07 TO 0730HRS 24/12/07 | 0.0564 | $68,000.00 | 490 |
| 0840HRS 24/12/07 TO 1425HRS 24/12/07 | 0.0425 | $68,000.00 | 490 |
| 1410HRS 24/12/07 TO 1930HRS 24/12/07 | 0.0556 | $68,000.00 | 490 |
| 2030HRS 24/12/07 TO 2400HRS 24/12/07 | 0.0365 | $68,000.00 | 490 |
| 0000HRS 25/12/07 TO 0100HRS 25/12/07 | 0.0104 | $68,000.00 | 490 |
| 0210HRS 25/12/07 TO 0720HRS 25/12/07 | 0.05382 | $68,000.00 | 490 |
| 1100HRS 25/12/07 TO 1300HRS 25/12/07 | 0.02083 | $68,000.00 | 490 |
| 1420HRS 25/12/07 TO 1915HRS 25/12/07 | 0.05122 | $68,000.00 | 490 |
| 2030HRS 25/12/07 TO 2400HRS 25/12/07 | 0.03646 | $68,000.00 | 490 |
| 0000HRS 26/12/07 TO 0040HRS 26/12/07 | 0.007 | $68,000.00 | 490 |
| 0210HRS 26/12/07 TO 0715HRS 26/12/07 | 0.053 | $68,000.00 | 490 |
| 0830HRS 26/12/07 TO 1245HRS 26/12/07 | 0.0443 | $68,000.00 | 490 |
| 1410HRS 26/12/07 TO 1930HRS 26/12/07 | 0.0556 | $68,000.00 | 490 |
| 2045HRS 26/12/07 TO 2400HRS 26/12/07 | 0.0339 | $68,000.00 | 490 |
| 0000HRS 27/12/07 TO 0100HRS 27/12/07 | 0.0104 | $68,000.00 | 490 |
| 0215HRS 27/12/07 TO 0715HRS 27/12/07 | 0.0521 | $68,000.00 | 490 |
| 0830HRS 27/12/07 TO 1245HRS 27/12/07 | 0.0885 | $68,000.00 | 490 |
| 1410HRS 27/12/07 TO 1930HRS 27/12/07 | 0.1111 | $68,000.00 | 490 |
| 2050HRS 27/12/07 TO 2400HRS 27/12/07 | 0.066 | $68,000.00 | 490 |
| 0000HRS 28/12/07 TO 0040HRS 28/12/07 | 0.0139 | $68,000.00 | 490 |
| 0210HRS 28/12/07 TO 0720HRS 28/12/07 | 0.1076 | $68,000.00 | 490 |
| 0900HRS 28/12/07 TO 1310HRS 28/12/07 | 0.0434 | $68,000.00 | 490 |
| 1425HRS 28/12/07 TO 1920HRS 28/12/07 | 0.0512 | $68,000.00 | 490 |
| 2030HRS 28/12/07 TO 2400HRS 28/12/07 | 0.1094 | $68,000.00 | 490 |
| 0000HRS 29/12/07 TO 0025HRS 29/12/07 | 0.013 | $68,000.00 | 490 |
| 0210HRS 29/12/07 TO 0710HRS 29/12/07 | 0.1562 | $68,000.00 | 490 |
| 0900HRS 29/12/07 TO 1245HRS 29/12/07 | 0.0391 | $68,000.00 | 490 |
| 1400HRS 29/12/07 TO 1930HRS 29/12/07 | 0.0573 | $68,000.00 | 490 |
| 2045HRS 29/12/07 TO 2400HRS 29/12/07 | 0.03385 | $68,000.00 | 490 |
| 0000HRS 30/12/07 TO 0100HRS 30/12/07 | 0.0104 | $68,000.00 | 490 |
| 0230HRS 30/12/07 TO 0740HRS 30/12/07 | 0.0538 | $68,000.00 | 490 |
| 0900HRS 30/12/07 TO 1240HRS 30/12/07 | 0.0382 | $68,000.00 | 490 |
| 1405HRS 30/12/07 TO 1920HRS 30/12/07 | 0.0547 | $68,000.00 | 490 |
| 2050HRS 30/12/07 TO 2400HRS 30/12/07 | 0.033 | $68,000.00 | 490 |
| 0000HRS 31/12/07 TO 0100HRS 31/12/07 | 0.01042 | $68,000.00 | 490 |
| 0200HRS 31/12/07 TO 0720HRS 31/12/07 | 0.556 | $68,000.00 | 490 |

| | | | | |
|---|---|---|---|---|
| 0845HRS 31/12/07 TO 1000HRS 31/12/07 | 0.01302 | $68,000.00 | | 490 |
| | 3.53631 | $68,000.00 | 3.5 | 490 |

_ICHEVYSK REVISED

| | | |
|---|---|---|
| 780 | - | 1 SHORE CRANE & 2 SHIPS CRANES WORKING (25% OFF HIRE) |
| 780 | | 1 SHORE CRANE & 2 SHIPS CRANES WORKING (25% OFF HIRE) |
| 780 | | 2 SHORE CRANES WORKING (50% OFF HIRE) |
| 780 | | 2 SHORE CRANES WORKING (50% OFF HIRE) |
| 780 | | 2 SHORE CRANES WORKING (50% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | NO LIGHTS PROVIDED DUE GENERATOR PRB (100% OFF HIRE) |
| 780 | | 1 SHORE CRANE DUE GENERATOR PROBLEM (75% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 2 SHORE CRANES DUE TO GENERATOR PROB (50% OFF HIRE) |
| 780 | | 2 SHORE CRANES DUE TO GENERATOR PROB (50% OFF HIRE) |
| 780 | | 2 SHORE CRANES DUE TO GENERATOR PROB (50% OFF HIRE) |
| 780 | | 2 SHORE CRANES DUE TO GENERATOR PROB (50% OFF HIRE) |
| 780 | | 2 SHORE CRANES DUE TO GENERATOR PROB (50% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 1 SHORE CRANE DUE TO GENERATOR PROB (75% OFF HIRE) |
| 780 | | 1 SHORES CRANES DUE GENERATOR PROBLEM (75% OFF HIRE) |
| 780 | | 1 SHORES CRANES DUE GENERATOR PROBLEM (75% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORE CRANES DUE TO GENERATOR PROB (25% OFF HIRE) |
| 780 | | 3 SHORE CRANES DUE TO GENERATOR PROB (25% OFF HIRE) |
| 780 | | 3 SHORE CRANES DUE TO GENERATOR PROB (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |
| 780 | | 3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE) |

780                          3 SHORES CRANES DUE GENERATOR PROBLEM (25% OFF HIRE)
                             **LOADING. HAVE EXCLUDED TIMINGS FOR SHIF CHANGES,MEAL BREAKS**
        780      $246,533.85 **ETC**